**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

JAMES M. CARR,

        Petitioner,        :        Case No. 1:06-cv-867

                      :        District Judge S. Arthur Spiegel
    -vs-                           Chief Magistrate Judge Michael R. Merz

WARDEN, Lebanon Correctional
  Institution,

                      :

        Respondent.

**REPORT AND RECOMMENDATIONS**

Petitioner James M. Carr brought this habeas corpus action to seek relief from his December 17, 2003, sentence to three years confinement upon his conviction for manufacturing drugs. He pleads the following grounds for relief:

> **Ground One:** Petitioner's right to due process of law was violated by the withholding of exculpatory evidence by the state.
>
> **Supporting Facts:** Prior to trial, the prosecution obtained a tape recorded interview with the sole inculpatory witness which contained substantial impeaching information to undermine his perjured trial testimony. The evidence was material, exculpatory as impeaching, and was withheld by the prosecution. The new trial motion in which is [sic] was properly introduced was erroneously denied. Petitioner is actually innocent.
>
> **Ground Two:** Petitioner was deprived of the effective assistance of counsel on appeal, violating the 6th and 14th Amendments.
>
> **Supporting Facts:** Appointed appellate counsel neglected to raise significant and obvious issues of constitutional magnitude, including erroneous and prejudicial jury instructions, prosecutorial misconduct

> throughout the trial, and ineffective assistance of trial counsel for failing to raise proper objections which prejudiced the trial; all of which prejudiced the results of the appeal, as well as failing to notify Petitioner of the decision of the court of appeals, further prejudicing the appeals process.
>
> **Ground Three:** Petitioner was deprived of the Sixth Amendment right to trial by a fair and impartial jury.
>
> **Supporting Facts:** The trial court erroneously instructed the jury on a "flight" instruction where there was no evidence in the record to warrant the inclusion of the instruction and over vehement objection, creating an impermissible shifting of the burden of proof by permitting an impermissible presumption.
>
> **Ground Four:** Petitioner was denied due process of law by the misconduct of the prosecutor.
>
> **Supporting Facts:** The prosecutor repeatedly elicited improper "other acts" evidence, which was specifically precluded in a pre-trial motion in limine; elicited unconstitutional testimony regarding the post-arrest silence of Petitioner, and misstated the law and facts while improperly denigrating the defense during closing arguments, so infecting the entire trial with unfairness as to deny due process of law.
>
> **Ground Five:** Petitioner was denied effective counsel at trial in violation of the 6th and 14th Amendments.
>
> **Supporting Facts:** Trial counsel failed to raise proper objections at trial, including to the repeated vioaltion [sic] of the trial court's order in the pretrial motion in limine, prohibiting the introduction of "other acts" evidence; failed to object to the elicitation of testimony regarding Petitioner's post arrest silence, and failed to make the adversarial testing process work at trial, which prejudiced the results of the proceedings against the Petitioner.

(Petition, Doc. No. 1, at 6-10, 16.)

On December 17, 2007, having found that the Petition presented some claims (Grounds 3, 4, and 5) on which Petitioner had not yet exhausted his available state court remedies, the Court stayed these proceedings pending exhaustion (Doc. No. 9). However, that Order was vacated two

weeks later upon notice from Petitioner that he had in fact taken a timely direct appeal from his conviction (Doc. Nos. 12, 14). Respondent has now filed an Amended Return of Writ (Doc. No. 17) and Petitioner has replied (Doc. No. 18).

## Procedural History

Petitioner was indicted by the Clermont County Grand Jury and convicted at jury trial on one count of manufacturing methamphetamine. In October, 2003, he filed a motion for new trial on the claim that the prosecution failed to provide him with exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Petitioner filed a timely appeal to the Clermont County Court of Appeals, raising only one assignment of error, to wit, "[t]he trial court erred in denying Defendant's motion for a new trial when exculpatory evidence was discovered after trial." On February 7, 2005, the Court of Appeals affirmed the conviction. On May 4, 2006, Petitioner sought to appeal that decision to the Ohio Supreme Court, which declined to consider the appeal.

On May 8, 2006, Petitioner filed an application to reopen his direct appeal, asserting that he had received ineffective assistance of appellate counsel because counsel did not raise the following four proposed assignments of error:

> 1. The trial court erred in giving a "flight" jury instruction where it was not pertinent to proof in the record and served only to mislead the jury, in violation of the Sixth Amendment right to trial by fair and impartial jury.
>
> 2. Misconduct of the prosecutor so infected the entire proceedings with unfairness as to violate due process of law and require reversal.

>3. Appellant was denied the effective assistance of counsel at trial, in violation of the Sixth and Fourteenth Amendments.
>
>4. Appellant's conviction is against the manifest weight of the evidence.

(Exhibit 13 to Return of Writ, Doc. No. 4.)  This application was denied as untimely under Ohio App. R. 26(B) on July 13, 2006, and the Ohio Supreme Court declined further review on October 4, 2006.  The instant Petition, signed November 28, 2006, is deemed filed that date under *Houston v. Lack,* 487 U.S. 266 (1988).

## Analysis

### Procedural Default

Respondent contends that all of Petitioner's Grounds for Relief are barred from merit consideration in this court by Petitioner's procedural default in presenting them to the Ohio courts.

The standard for evaluating a procedural default defense is as follows:

>In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 749, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *see also Simpson v. Jones,* 238 F. 3rd 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal

habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963).

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright v. Sykes*, 433 U. S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). *Murray v. Carrier*, 477 U.S. 478, 485, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); *Mapes v. Coyle,* 171 F. 3rd 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.

> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d, at 138.

**Ground One**

In Ground One, Petitioner asserts he was deprived of his constitutional right to a fair trial by the withholding of impeaching evidence, an audiotape which would have undermined the credibility of a key state's witness. Respondent asserts that this claim was procedurally defaulted when Petitioner failed to file a timely appeal to the Ohio Supreme Court from the Twelfth District Court of Appeals.

Petitioner acknowledges that he did not file his Notice of Appeals with the Ohio Supreme Court within the forty-days allowed by that court's Rules of Practice. In fact, the Court of Appeals'

decision was filed February 7, 2005, and the Notice of Appeal to the Ohio Supreme Court was not filed until May 4, 2006, 451 days later.

Petitioner does not deny the existence of the Ohio Supreme Court rule or that it was applied to bar his appeal in this case. Rather, he claims as excusing cause the ineffective assistance of his appellate counsel. He asserts that his appointed appellate counsel never told him that the appeal had been decided. As evidence he relies on his letter to the Clerk of the Court of Appeals of November 17, 2005, inquiring of the status of the appeal (Exhibit to Application for Reopening, Ex. 13 to Return of Writ, Doc. No. 4). Sometime before December 9, 2005, he received a response from the Clerk which showed that the appeal had been decided the previous February. Petitioner waited from whenever he received the letter from the Clerk of Courts until May 4, 2006, a period of 146 days at least, to file with the Ohio Supreme Court.

Petitioner claims that the latter period of delay was necessary because he had first to file a grievance with the Ohio Supreme Court Disciplinary Counsel and obtain a ruling before he had "evidence" of the cause for delay, to wit, his counsel's failure to notify him.[1] That argument was unpersuasive to the Ohio Supreme Court and is likewise unpersuasive to this Court. In a letter to Petitioner dated April 4, 2006, Disciplinary Counsel found "[i]t appears that Attorney Koligian neglected your case by failing to inform you timely of the opinion of the court of appeals."(Attachment to Ex. 13 to Return of Writ). While that finding is indeed evidence that an attorney, Assistant Disciplinary Counsel Shinn, found appellate counsel's conduct to be neglectful,

---

[1] "Petitioner submits that, without the decision of the Disciplinary Counsel, he was without any evidence of his claims relating to the reasons for failing to timely appeal to the Ohio Supreme Court and it was, therefore, necessary to await the written decision to append to the delayed appeal request." (Reply, Doc. No. 18, at 4-5.)

Attorney Koligian had already essentially admitted that in her January 5, 2006, letter to Mr. Carr with which she enclosed the briefs on appeal and the Decision of the Twelfth District.

Thus Petitioner has established good cause for his delay in filing in the Supreme Court until December, 2005, when he learned of the adverse appellate decision or, arguably, until January, 2006, when he obtained the admission and documents from Attorney Koligian. There was no manifest need to wait an additional four months to file when the usual filing deadline for a notice of appeal is 45 days from decision in the Court of Appeals. Good cause can excuse the lack of a filing only while it exists, not for an indefinite period. *State v. Fox,* 83 Ohio St. 3d 514, 700 N.E. 2d 1253 (1998).

In addition to arguing cause to excuse the default, Petitioner also asserts that the Ohio Supreme Court's requirement of good cause for delayed appeal "is essentially meaningless because the rule, as written and applied, allowed unfettered discretion with no guidelines as to what does or does not constitute good cause for delay and is therefore not an adequate or independent state ground to bar habeas review." Reply at 5, citing *Deitz v. Money*, 391 F.3d 804 (6th Cir. 2004). However, *Deitz* applies only to delayed appeals to the intermediate courts of appeals under Ohio R. App. P. 5. The Sixth Circuit has expressly held that the 45-day time limit on appeal to Ohio Supreme Court is an adequate and independent state ground. *Bonilla v. Hurley,* 370 F.3d 494 (6th Cir. 2004).[2]

Ground One for Relief is procedurally defaulted by Petitioner's failure to timely present it to the Ohio Supreme Court on direct appeal. It should be dismissed with prejudice on that basis.

---

[2] The language in Ohio App. R. 5 and that in the Ohio Supreme Court Rules about delayed appeal is admittedly very similar. Both *Bonilla* and *Deitz* are published opinions of the Sixth Circuit binding on this Court. When a trial court is faced with two precedents whose logic seems in conflict, it must narrowly construe the holdings of the two cases so as to respect both precedents, if possible.

Alternatively, if the Court were to consider the merits of this Ground for Relief, it would have to apply the law recently elaborated by the Supreme Court for review of state court decisions on claims later raised in federal habeas corpus:

> The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under law. See *Williams v. Taylor,* 529 U.S. 362, 403-404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). To these ends, § 2254(d)(1) provides:
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."
>
> As we stated in *Williams,* § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S., at 404-405, 120 S.Ct. 1495. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. *Id.,* at 405-406, 120 S. Ct. 1495. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. *Id.,* at 407-408, 120 S.Ct. 1495. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one. *Id.,* at 409- 410, 120 S.Ct. 1495. See also *id.,* at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

*Bell v. Cone*, 535 U.S. 685, 693-94, 122 S. Ct. 1843, 1849-50, 152 L. Ed. 2d 914 (2002).

> AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. *Williams v. Taylor, supra,* at 405; *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) *(per curiam).* A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner. *Williams v. Taylor, supra,* at 405; *Woodford v. Visciotti,* 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) *(per curiam).*

*Brown v. Payton,* 544 U.S. 133, 134 125 S. Ct. 1432, 161 L. Ed. 2d 334 (2005).

The Twelfth District Court of Appeals decided this claim on the merits.  The claim is that, after trial, Petitioner discovered a police summary of what the principal witness against him, a Jeffrey Popp, had told the police, to wit, that he had told Carr not to use anhydrous ammonia (needed for the manufacture of methamphetamine) in the shed on Popp's property, but rather to conduct that part of the operation in Carr's van, so as to protect Popp's children from the hazards involved in the manufacture of this drug.  Popp's testimony at trial was that the manufacturing was taking place in the shed.  In denying the motion for new trial, the Clermont County Court of Common Pleas decided that, because the inconsistency had been revealed during Popp's trial testimony, there was no *Brady* violation.  Reviewing this claim de novo as a due process claim, rather than under the usual abuse of discretion standard for denial of a new trial, the Court of Appeals also found no *Brady* violation.

*State v. Carr*, 2005-Ohio-417 (Ohio App. 12th Dist. Feb. 7, 2005)(copy attached as Ex. 12 to Return of Writ, Doc. No. 4).

This decision was not an objectively unreasonable application of clearly established Supreme Court law. *Brady* "is concerned only with cases in which the government possesses information which the defendant does not, and the government's failure to disclose the information deprives the defendant of a fair trial." *United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994). There is no *Brady* violation where the defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information or where the evidence is available to the defendant from another source. *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991). No *Brady* violation occurs where the government does not disclose witness statements but the defendant knew that the witness had potentially exculpatory information. *United States v. Todd,* 920 F.2d 399, 405 (6th Cir. 1990). See also *Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007) ("Where, like here, 'the factual basis for a claim is 'reasonably available to' the petitioner or his counsel from another source, the government is under no duty to supply that information to the defense.") (citation omitted); *Coe v. Bell,* 161 F.3d 320, 344 (6th Cir. 1998) (There is no *Brady* violation where information is available to the defense "because in such cases there is really nothing for the government to disclose.") *Bell v. Bell*, ___ F. 3d ___, 2008 U.S. App. LEXIS 155 (6th Cir. 2008)(en banc) (*Matthews* applied even when the prosecutor denied the existence of some of the material.)

If the Court decides that Petitioner has shown adequate cause for his failure to timely file in the Ohio Supreme Court, it should nonetheless dismiss the first Ground for Relief with prejudice on the merits.

**Ground Two**

In Ground Two, Petitioner claims he was denied effective assistance of appellate counsel when that attorney neglected to raise as error erroneous and prejudicial jury instructions, prosecutorial misconduct throughout the trial, ineffective assistance of trial counsel for failing to raise proper objections which prejudiced the trial, and failure to notify him of the results of the appeal.

The governing standard for effective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the

> defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 106 S. Ct 2464, 91 L. Ed. 2d 144 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985); *Penson v. Ohio*, 488 U.S. 75, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988). Counsel must be appointed on appeal of right for indigent criminal defendants. *Douglas v. California*, 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963); *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967); *United States v. Cronic,* 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). The right to counsel is limited to the first appeal as of right. *Ross v. Moffitt*, 417 U.S. 600, 94 S. Ct. 2437, 41 L. Ed. 2d 341 (1974). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776, 107 S. Ct. 3114, 97 L. Ed. 2d 638 (1987). The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most

on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004)*;See Smith v. Murray*, 477 U.S. 527, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986). However, failure to raise an issue can amount to ineffective assistance. *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), *citing Joshua v. Dewitt,* 341 F.3d 430, 441 (6th Cir. 2003); *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle,* 171 F.3d 408, 427-29 (6th Cir. 1999).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000), citing *Strickland* and *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Counsels' failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004), *citing Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001), *cert. denied,* 535 U.S. 940 (2002). "Counsel's performance is strongly presumed to be effective." *McFarland, quoting Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)(*citing Strickland*). To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented. *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

As with Ground One, Respondent asserts this Ground Two for Relief is procedurally defaulted by Petitioner's failure to present it in timely fashion, i.e., by failing to file his application for reopening of the direct appeal within ninety days of appeals' court's decision on direct appeal which was filed February 7, 2005. There is no doubt that Ohio has a rule requiring the filing of such

an application within ninety days of judgment, to wit, Ohio App. R. 26(B)(2)(1). Nor is there any doubt this rule was enforced against Petitioner. The Twelfth District Court of Appeals expressly relied on this rule in refusing to consider the application for reopening on its merits. (Entry, Ex. 15 to Return of Writ, Doc. No. 4).

Petitioner claims he can show good cause to excuse the procedural default, to wit, the same cause he proffered as to Ground One: failure of his counsel to advise him of the results of the appeal and the consequent delay in his learning of the result and obtaining the papers necessary for the application.

The same analysis as applied to Ground One is applicable to this Ground. While failure of his appellate counsel to advise him of the results of the appeal excuse his failure until early January, 2006. They do not excuse his waiting until early May to file the application for reopening. Contrary to his assertion (Reply, Doc. No. 18, at 6-7), the delay is more than the ninety days provided in Ohio App. R. 26(B)(1).

Petitioner also asserts the good cause for delay provision in Ohio App. R. 26(B) is no more an adequate rule than the cognate good cause provision in the Ohio Supreme Court Rules of Practice as to delayed appeal and for the same reason: it grants "unfettered discretion" to the Ohio courts of appeals to decide what constitutes good cause. However, the Sixth Circuit has held in a published opinion that the timeliness rule in 26(B) is an adequate and independent state ground for relief. *Monzo v. Edwards*, 281 F.3d 568 (6th Cir. 2002).

Ground Two for Relief should therefore be dismissed with prejudice as procedurally defaulted. Respondent and Petitioner have not argued the merits of this Ground for Relief in the Return, Amended Return, and Reply. Petitioner makes a brief set of assertions about why appellate

counsel was ineffective in his Merit Brief, but comes nowhere near demonstrating that the omitted assignments of error would likely have been successful or were indeed stronger than the assignment actually made.  Ground Two should also fail, alternatively, on the merits.

### Grounds Three, Four, and Five

In Ground Three, Petitioner asserts he was denied a fair trial because the "trial court erroneously instructed the jury on a "flight" instruction where there was no evidence in the record to warrant the inclusion of the instruction and over vehement objection, creating an impermissible shifting of the burden of proof by permitting an impermissible presumption."

In Ground Four Petitioner asserts he was denied a fair trial because the "prosecutor repeatedly elicited improper "other acts" evidence, which was specifically precluded in a pre-trial motion in limine; elicited unconstitutional testimony regarding the post-arrest silence of Petitioner, and misstated the law and facts while improperly denigrating the defense during closing arguments, so infecting the entire trial with unfairness as to deny due process of law."

In Ground Five, Petitioner asserts he was denied effective assistance of counsel at trial when "[t]rial counsel failed to raise proper objections at trial, including to the repeated vioaltion [sic] of the trial court's order in the pretrial motion in limine, prohibiting the introduction of "other acts" evidence; failed to object to the elicitation of testimony regarding Petitioner's post arrest silence, and failed to make the adversarial testing process work at trial, which prejudiced the results of the proceedings against the Petitioner."

Respondent asserts these Grounds for Relief are all procedurally defaulted because they were

not raised on direct appeal, but were presented to the Ohio courts for the first time in the App. R. 26(B) Application. Petitioner concedes that the first time he presented these claims was in the 26(B) Application, but asserts that constitutes "fair presentment" of the claims for decision on the merits.

Petitioner cites no Ohio or federal law to the effect that presenting proposed assignments of error in a 26(B) application cures any default in presenting them on the original direct appeal. In fact, the proposed assignments of error in a 26(B) application are only to be considered on the merits if the court of appeals first decides that it was arguably ineffective assistance of appellate counsel to omit them in the first instance. In fact, Ohio and federal law is to the contrary. "Neither *Murnahan* nor App. R. 26(B) was intended as an open invitation for persons sentenced to long periods of incarceration to concoct new theories of ineffective assistance of appellate counsel in order to have a new round of appeals." *State v. Reddick* 72 Ohio St.3d 88, 90-91, 1995-Ohio-249, 647 N.E.2d 784 (1995). "In light of the requirements of Rule 26(B), the [appellate] court's holding must be read as pertaining to the merits' of [petitioner's] ineffective assistance of appellate counsel claim, not his state procedural rule claim." *Roberts v. Carter,* 337 F.3d 609 (6th Cir. 2003).

Additionally, even if filing a procedurally correct 26(B) application did constitute fair presentment, Petitioner's 26(B) Application was not properly filed because it was untimely, as shown above under Ground Two. Grounds Three, Four, and Five are procedurally defaulted and should be dismissed with prejudice.

## Conclusion

All Grounds for Relief in the Petition were procedurally defaulted in the state courts and

Petitioner has not shown excusing cause. The Petition should therefore be dismissed with prejudice.

April 23, 2008.

s/ **Michael R. Merz**<br>Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).